UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARGITTA KNIGHT, Plaintiff,

v. Civil Action No. 3:16-cv-39-DJH

AMEDISYS HOLDING, LLC, and DONNA
HILL, Defendants.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Amedisys Holding fired Margitta Knight from her job at a home health care center. Knight then sued Amedisys and her former Amedisys supervisor, Donna Hill, in Hardin County Circuit Court, alleging various violations of federal and state law in connection with her employment and termination. (Docket No. 1-1) Defendants removed the case to this Court, (D.N. 1) and then moved to compel arbitration and dismiss or, alternatively, stay this litigation. (D.N. 5) They later sought leave to submit supplemental authority in further support of their motion to compel arbitration. (D.N. 10) For the reasons outlined below, the Court will grant the defendants' motions and dismiss the case.

**I.      BACKGROUND**

Amedisys hired Knight on March 1, 2008, to "work as a Business Office Manager . . . at Amedisys' care center in Elizabethtown, Kentucky." (D.N. 5-1, PageID # 85) The center specialized in providing in-home care to patients. (D.N. 1-1, PageID # 19-20) Knight reported to Defendant Donna Hill, Director of Operations at the care center. (D.N. 5-1, PageID # 85) Knight alleges that she and Hill had a number of disagreements, beginning in December 2012 with a dispute over a timesheet and continuing until Knight's termination on October 10, 2014.

1

(D.N. 1-1, PageID # 20-24)  Knight claims that as a result of these disputes she was "targeted" by Hill, and that Hill fired her for "pretextual[]" reasons.  (*Id.*)

On August 6, 2013, while still employed by Amedisys, Knight received an email from the company stating: "This e-mail contains important time-sensitive materials that the Company requires that you read as they could affect your legal rights. Please click here to receive them." (D.N. 5-1, PageID # 85; D.N. 5-2)  When Knight clicked on the link, the following form appeared:

THE AMEDISYS ARBITRATION PROGRAM
**ACKNOWLEDGEMENT FORM**

> By clicking "Acknowledge" below, you will be given access to the Amedisys Arbitration Program materials, which include a Cover Letter, the Dispute Resolution Agreement, and FAQs. You are required to review these materials. Please read the materials carefully. **Unless you opt out of the Dispute Resolution Agreement within 30 days of today's date, you will be bound by it, which will affect your legal rights.**
>
> By clicking the "Acknowledge" button on this screen I acknowledge and understand that I will be given access to the materials described in the above paragraph and that I am required to review these materials.

(D.N. 5-1, PageID # 85-86; D.N. 5-3)  On August 7, 2013, Knight clicked the "Acknowledge" button and was taken to a webpage that contained a cover letter, the arbitration agreement, and a FAQ fact sheet.  (D.N. 5-1, PageID # 85-86; D.N. 5-5; D.N. 5-6)  In relevant part, the arbitration agreement stated:

> This Dispute Resolution Agreement (the "Agreement") is an agreement to resolve any and all legal disputes between you ("Employee") and Amedisys before an arbitrator, rather than in court. . . . This Agreement contains an "opt-out" provision . . . . Unless Employee opts out of the Agreement, the Agreement will govern the terms and conditions of your employment, and will require that any claim Employee may have . . . be resolved in arbitration and not in court.

> . . . . This Agreement applies to any dispute arising out of or related to Employee's employment with Amedisys or termination of employment . . . . **this Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.**
> . . . . [T]his Agreement shall not be construed to require the arbitration of any *qui tam* claims brought pursuant to the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) – (G), or any whistleblower claims made to the Centers for Medicare & Medicaid Services ("CMS") pursuant to 42 C.F.R. § 420. . . .
> **Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement**.

(D.N. 5-6)  Knight did not submit the opt-out form to Amedisys.  (D.N. 5-1, PageID # 87)

On December 22, 2015, Knight filed suit against Amedisys and Hill in Hardin County Circuit Court, alleging: (1) age discrimination pursuant to Ky. Rev. Stat. Ann. § 344.040; (2) sex discrimination in violation of Ky. Rev. Stat. Ann. § 344.040; (3) retaliation pursuant to Ky. Rev. Stat. Ann. § 216B.165; (4) retaliation in violation of Ky. Rev. Stat. Ann. §§ 344.040, 644.280; (5) negligence in hiring, retention, and supervision; (6) intentional infliction of emotional distress; (7) wrongful termination; (8) fraud pursuant to the Federal False Claims Act, 31 U.S.C. § 3729, *et. seq.*; and (9) civil conspiracy in violation of the False Claims Act, 31 U.S.C. § 3729.  (D.N. 1-1)

Defendants removed the case to this Court on January 20, 2016.  (D.N. 1)  One week later, they moved to compel arbitration and dismiss or, alternatively, stay these proceedings pursuant to the terms of the arbitration agreement.  (D.N. 5)  On August 2, 2016, Defendants moved for leave to submit supplemental authority in further support of their motion to compel arbitration.  (D.N. 10)

## II.   DISCUSSION

### a.  Motion for Leave to File Supplemental Authority

Defendants seek to introduce *Langlois v. Amedisys, Inc.*, No. 15-835-SDD-RLB, 2016 WL 4059670 (M.D. La. July 27, 2016), as additional support for their motion to compel arbitration.  (D.N. 10)  The *Langlois* plaintiff, like Knight, claimed to have been wrongfully terminated by Amedisys.  2016 WL 4059670 at *1.  Amedisys sought to compel arbitration based on the same Dispute Resolution Agreement described above.  (D.N. 10)  The court ruled in Amedisys' favor, holding that the agreement was valid under state law and governed by the Federal Arbitration Act.  (*Id*.)

Knight argues that *Langlois* is not relevant and should not be considered because Knight and Langlois made different legal arguments with respect to the validity of the contract and *Langlois* involved Louisiana law, whereas this case is based on Kentucky law.  (D.N. 12)  This Court recognizes that the *Langlois* decision is based upon application of Louisiana law, but because *Langlois* also dealt with the same arbitration agreement and a similar employment dispute as are at issue here, the Court will grant Amedisys' motion for leave to file supplemental authority.

### b.  Motion to Compel Arbitration

The Court considers four factors when evaluating a motion to compel arbitration under the Federal Arbitration Act:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). "It is well-established that any doubts regarding arbitrability should be resolved in favor of arbitration." *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

In this case, the Court finds arbitration to be the appropriate forum for resolving Knight's claims against the Defendants. With respect to the first *Glazer* factor, the Court must determine whether the Dispute Resolution Agreement was a valid contract under state law. *See Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016). Knight argues that there was not a valid contract because she never signed the arbitration agreement or opt-out form. (D.N. 8, PageID # 141-42) However, "[u]nder Kentucky law, parties can be bound to contracts, even absent a signature, when their actions indicate acceptance of the contract's terms." *Polly v. Affiliated Computer Servs.*, No. 10-135-ART, 2011 WL 93715, at *4 (E.D. Ky. Jan. 11, 2011) (citing *Sweeney v. Theobald,* 128 S.W.3d 498, 501 (Ky. Ct. App. 2004)). In Kentucky, acceptance is a "manifestation of assent to the terms [of an offer] made by the offeree in a manner invited or required by the offer." *Ky. Emps. Ret. Sys. v. Seven Ctys. Servs. Inc.*, 550 B.R. 741, 761 (W.D. Ky. 2016). A number of courts have held that digital acknowledgment forms indicate acceptance under Kentucky law, and "pre-dispute arbitration agreements and acknowledgment forms have been consistently enforced as binding." *Aldrich v. Univ. of Phoenix, Inc.*, No. 3:15-CV-00578-JHM, 2016 WL 915287, at *5 (W.D. Ky. Mar. 4, 2016) (citing *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1000 (6th Cir. 2009); *Polly*, 2011 WL 93715, at *1–3; *Johnson v. Career Sys. Devs.*, No. CIV. A. 4:09CV-76-M, 2010 WL 292667, at *2 (W.D. Ky. Jan. 20, 2010)).

In this case, Knight clicked a box to indicate that she "acknowledge[d] and underst[ood]" that she was receiving Dispute Resolution Agreement materials. (D.N. 5-5, PageID # 109)  Both the acknowledgment form and the Dispute Resolution Agreement materials stated that Knight would have thirty days from the date of her acknowledgment to opt out of the Dispute Resolution Agreement and that otherwise, she would be bound by the agreement.  (D.N. 5-5, PageID # 109; D.N. 5-6, PageID # 116-18)  Because Knight clicked the acknowledgment form to indicate that she received and understood the materials, and she did not opt out of the Agreement, Knight manifested her assent to the Agreement, including the agreement to arbitrate.  *See, e.g.*, *Polly*, 2011 WL 93715, at *1–3 (holding that plaintiff agreed to arbitration when she digitally acknowledged that she had received and agreed to the "Dispute Resolution Plan").  The first *Glazer* factor is therefore met.  *See* 394 F.3d at 451.

Furthermore, the arbitration agreement encompasses the claims before this Court.  The Agreement states, "This Agreement applies to any dispute arising out of or related to Employee's employment with Amedisys or termination of employment."  (D.N. 5-6, PageID # 111-12)  All of Knight's claims pertain to her termination; therefore, they are covered by the arbitration agreement.  (D.N. 1-1)  However, Knight asserts that her several of her claims fall under an exception to the agreement that excludes "*qui tam* claims brought pursuant to the False Claims Act" and "whistleblower claims made to the Centers for Medicare & Medicaid Services pursuant to 42 C.F.R. § 420.405."[1]  (D.N. 8, PageID # 142 (quoting D.N. 5-6, PageID # 112-13))  While Knight does bring a claim alleging fraud pursuant to the False Claims Act, it is not a *qui tam*

---

[1] In arguing that Plaintiff's False Claims Act claims should be excluded from arbitration, Plaintiff's brief utilizes inappropriate language. (*See, e.g.*, D.N. 8, PageID # 142)  The Court notes that Plaintiff's counsel has a history of inappropriate language in his submissions to this Court, and has previously been admonished for similar conduct.  *See Needler v. Coca-Cola Refreshments USA Inc.*, No. 3:13-CV-781-CRS (W.D. Ky. March 4, 2016).  Going forward, counsel shall refrain from employing such inappropriate language.

6

claim. (D.N. 1-1, PageID # 28-29) Among other procedural requirements, a *qui tam* claim must be "brought in the name of the Government." 31 U.S.C. § 3730(b). Knight did not assert a claim in the name of the government and has not followed any of the other statutory requirements. In short, she has not alleged a *qui tam* claim that would be excluded from arbitration. (*See* D.N. 1-1)

Knight also appears to assert a whistleblower claim made to the Centers for Medicare & Medicaid Services by alleging that she "made oral and written complaints about suspect billing to Medicare and Medicaid" and that her termination was in response to these complaints. (D.N. 1-1, PageID # 28-29) However, Knight has not asserted that her complaints were made pursuant to 42 C.F.R. § 420.405, which is required in order for the claim to be excluded from the arbitration agreement. (*See id.*) Section 420.405 provides for a "quasi-*qui tam*" claim, Alice G. Gosfield, Medicare and Medicaid Fraud and Abuse § 5:13 (2016), in which a person who reports abuse may receive "a monetary reward for information that leads to the recovery of at least $100 of Medicare funds." 42 C.F.R. § 420.405. Neither Knight's complaint nor her response to the motion to compel arbitration cites this regulation or provides any facts suggesting that Knight's complaints about billing practices were made pursuant to this regulation. (*See* D.N. 1-1; D.N. 8) Instead, Knight asserts this claim under the Kentucky whistleblower statute, Ky. Rev. Stat. Ann. § 216B.165, and thus, this claim would not fall under the exclusion. (D.N. 1-1, PageID # 28-29) Because none of Knight's claims are covered by the exceptions provided for in the arbitration agreement, all are arbitrable pursuant to the agreement.

Knight's only federal statutory claims are allegations of fraud and civil conspiracy pursuant to the False Claims Act. "Although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress

itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Byrd v. Sun Tr. Bank*, No. 2:12–cv–02314–JPM–cgc, 2013 WL 3816714, at *14 (W.D. Tenn. July 22, 2013) (internal quotation marks omitted) (citing *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 562 (6th Cir. 2008)). "The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)). Knight has not met this burden. The only arguments provided by Knight for why her False Claims Act claims should not be arbitrated are that they fall under the exclusionary clause, as described above, and, more generally, that the costs of arbitration in this case will act as a deterrent for individuals seeking to assert similar claims. (D.N. 8, PageID # 140-43) Knight makes no argument that Congress intended for False Claims Act allegations to be "nonarbitrable." (*See id.*) Because Knight had the burden of showing that Congress intended for claims under the False Claims Act to be "nonarbitrable" and made no such argument, these claims will be considered arbitrable.

Finally, because none of Knight's claims fall under the limitations to the arbitration clause and all are considered arbitrable for the reasons discussed, it is not necessary to stay the proceedings in this case.

### III. CONCLUSION

For the reasons explained above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The defendants' Motion for Leave to Submit Supplemental Authority (D.N. 10) is **GRANTED**.

(2) The defendants' Motion to Compel Arbitration and Dismiss, Alternatively to Stay Action Pending Arbitration (D.N. 5) is **GRANTED**.  The parties are **COMPELLED** to arbitrate, pursuant to the terms of their agreement (D.N. 5-6), the issues that are the subject of Knight's claims in this case.  This action is **DISMISSED** and **STRICKEN** from the Court's docket.

September 28, 2016

**David J. Hale, Judge**
**United States District Court**